This time we call the next case for the day, 2015-60860, Convergys Corporation v. National May it please the Court, I'm Jennifer Asbrock with Frost Brown Todd here on behalf of Petitioner and Cross Respondent Convergys Corporation. This appeal arose from the NLRB's decision and order that Convergys violated the National Labor Relations Act by maintaining and enforcing a class and collective action waiver in its employment application. The Board's decision should be overturned based on two controlling legal principles established by this Court in D.R. Horton v. Murphy Oil, for which there has been no intervening change in the law to justify reconsideration. First, the NLRA provides no substantive right to a class or collective action. And second, the NLRA does not preclude employers from defending themselves through the enforcement of class and collective action waivers. But those other cases dealt with arbitration, didn't they? The other cases, you're correct, Your Honor. But you had a second act of Congress, supplementary of the substantive action, which contemplated an alternative remedy. And you don't have that with a class action. You have a, you don't, we don't have that here. We don't have the Arbitration Act with its strong policies in favor of arbitration. You're correct that the, there is a presumption in favor of arbitration, but the, this court has recognized, as has other courts and did the Board, in actually invalidating Convergys's waiver, that the. I recognize that, but let me direct your attention to the underlying Fair Labor Standards Act. The, the predicate of some of these other statements is the assertion that, that the collective feature of the Fair Labor Standards Act is procedural. And I, I recognize you have authority that says contrary, but there is also contrary authority, which they don't acknowledge. Which, in analysis, which deals with, when Congress created a Fair Labor Standards Act, the argument goes that, that the, that this is not a procedural right. There was a generic remedy already out there. They've made an internal provision, which is substantive. In the same context, we've seen the interpretation of the Fair Labor Standards, of the F-E-L-A, going back to the opinions, consistent opinions by, by Justice Black, by Havenstead, which deal with the question of, of where you have a, a federal statute such as the Fair Labor Standards Act. And it provides, and it, where you can go into the state court system and you take the state court system where it is, how much of the, of the provisions of the Fair Labor Standards Act must give way to the state court procedures. And in those circumstances, they, the, the court has found consistently that the Fair Labor Standards Act's provisions themselves are internal as to the remedy. So that while you take the state court system as you can, nonetheless, they, as you, as you should, by the, by its provision of attorney, for example, of a, of a right to jury trial, that the state courts must abide those because all I'm saying to you is that in that line of cases, there is, the analysis goes on the basis of whether or not the remedial provision provided by the private, by the statutory norm, or an internal to it, is substantive or procedural. I'll just put it to you. There's a very serious issue in my mind as to those things. I, I can, I, I know what the other courts have said here, but, but I want to be clear that I think there's a, there's a strong counter-argument as far as I go with it. Well, Your Honor, you're absolutely correct that there is more at issue here than the National Labor Relations Act. And this Court has already held in Carter v. Countrywide that collective actions may be waived under the Fair Labor Standards Act. In fact, a majority of courts have found that to be the case, and that is the controlling rule in, in, in this circuit. The National Labor Relations Board, however, has no right to interpret or enforce any law other than the National Labor Relations Act. And that act, in turn, cannot provide substantive rights under statutes where they do not otherwise exist. Collective, collective action is procedural, always not substantive. That's correct, Your Honor. Is that your position? Yes, that's correct, Your Honor. And that's under our case law. We're bound by that? Yes. That is correct. It was the 2004 case of Carter v. Countrywide. There's also a majority of circuits that also follow that. But it is a, a fundamentally different question than what is at issue before the Court today, however. Waivable in what context? You mean that you can agree to arbitrate it? I'm sorry? Waivable in, in what sense? That you, that the, without the, without an arbitration provision? Even without an arbitration provision, Your Honor, the, the D.R. Horton decision, as well as... I know, I know what D.R. Horton says, but you've said there's, there's all these other cases. Most of those other cases that were out of the arbitration provision, as well. Most of them did, Your Honor, but some Federal courts... I understand what our court did, but I'm, I'm just picking you up on that. Yes, yes. And we're bound by that. I'm not arguing otherwise. That's correct. But some Federal courts also did find them in severance agreements, as well. So outside the arbitration context. What's the lay of the land right now? I'm sorry? Circuit-wide. Yeah. Circuit-wise. Circuit-wise. With regard to the issue of, under the NLRA, so whether there's... Interpreting 157. Yeah. Interpreting 157, Section 7 of the National Labor Relations Board. There are five courts, just Federal courts, Federal Circuit courts that have ruled on the issue. The Second Circuit, Fifth Circuit, and Eighth Circuit all have found, with this court leading the way and, and issuing the vast majority of decisions, that there is no substantive right to a class or collective action under Section 7 of the, of the NLRA. With regard to the... And that, framing the issue that way, that's the broad reading of Horton, because it, it doesn't matter that it's the FAA context. That's absolutely... Right? That's absolutely correct, Judge, and Judge Higginson. They're just, they're reading just the, or other mutual aid or protection and concerted activities provision to not reach so far. Yes. That's exactly... But when you put the Second Circuit in that, of course, the Second Circuit Patterson decision had a panel saying, well, in light of the Seventh and the Ninth Circuit reasoning, we might not hold that way, but we're bound. Fair? That is true, and, and that, that Circuit decision has been, as I understand, there's been a petition for writ of certiorari granted by the U.S. Supreme Court. Granted? Not granted, I'm sorry, filed with the U.S. Supreme Court. Thank you. And, and likewise, our Murphy Oil didn't go en banc here, but the cert has been filed. That's correct. And, as well as in the Ninth, I believe the Ninth Circuit. But your position, as I understand it, is that even apart from Murphy Oil and D.A.H. Horton, that our law already said it wasn't a substantive right. That's absolutely correct. Is that your position? And actually, in Murphy Oil, at, at pinpoint 1016 of Murphy Oil, this court held that use of class and collective procedures, quote, is not a substantive right under Section 7 of the NLRA. I, I think, you know, this is a fascinating, of course, it's an issue that's got the circuits divided, and so we'll see what happens with the Supreme Court. But I guess a lot depends on how you frame the question, because when we say it isn't a substantive right, I don't start that way. I start with the text giving the NLRB whatever deference it has to interpret its own act. And so we start with the word concerted activity, and I don't, I don't personally see why the substantive procedural distinction matters. The question is, does collective legal action, is that subsumed in Congress's statement that employers can't impair an employee's right to take concerted activity? So I know our Court, at least a broad reading of it, would, would suggest that that's foreclosed, broad reading meaning even outside the FAA, and that, that's the primary issue you two are arguing here today. But taking a step back, why do we start by even looking at the line of authority? If the interpretation of 157 states concerted activity, why isn't the question just, is collective legal action under EASTEC and our ALTEC's decision concerted activity? Well, a class or collective action certainly is one possible tool, Your Honor, for exercising the right of concerted activity provided by Section 7 of the National Labor Relations Act. But it's only a procedural mechanism that's not a substantive right that is guaranteed by the NLRA. But 157 doesn't say but for procedural vehicles. No, Your Honor, it doesn't. So why is that distinction of any relevance when we're interpreting a federal statute and giving deference to the Board? Well, the, the, the Court is only giving deference to the Board's legal conclusions if they are rational and consistent with the intent and policies of the Act. But this Court has specifically emphasized in D.R. Horton that it should not defer to the Board's remedial preferences when they potentially implicate. But that was because of implicating the FAA. That's right. But didn't it say it in the abstract? Not just the, because of the FAA, but it had already said they didn't acquiesce to the remedial preferences. Yes. That, that is true, but particularly. Well, oh, stop there. Could you read to me where, I, I thought I read that decision very closely. Where did the panel, I'm not saying I don't agree with that, but where did the panel make that conjunctive statement that we would defer, we, we, we don't defer, I thought they said we, we don't defer because it implicates the FAA. Actually, the statement is at Penpoint Site 356, I believe, and it, it, it says, quote, we have accordingly never deferred to the Board's remedial preferences where such preferences potentially trench upon federal statutes and policies unrelated to the NLRA. And that's the, the federal statutes and policies they're discussing are the FAA. That's right. In that particular case, that's correct. However, outside of that context, and the reason that those were discussed is, frankly, the Board brought them up as well. So that was what this Court was looking at in that case. But those, those distinctions are also present with regard to other statutes that are implicated by this, such as the FLSA. And the ADEA. And the ADEA. Discussed in the decision. Yes, Your Honor. The ADEA in Gilmer. But what's the countervailing statute authority that allowing an employer as a condition of employment to say no concert, no collective legal claims may be used? What's the, what's the statute that's being undermined? Sure. The statute that's being undermined, frankly, is Section 7 and Section 9 of the NLRA itself, which also provides an equal right and an equal guarantee to employees to refrain from concerted action. So the two arguments have to be conjoined to prevail. In other words, your argument is, that's an interesting argument. The NLRB loses deference even though you're saying that the, your argument prevails because it defeats another section of the NLRA? Your Honor, it would absolutely, you know, defeat another section of the NLRA. Why would the NLRB lose deference as to that, as to interpreting how its own provisions can be reconciled? Because this, this Court, this Court's controlling precedent both in FLSA, because that, that's the, that's the class action context that we're talking about here, in the FLSA. The, the courts have held that. Concerted action, not class action. A class and collective action waiver. That's an important distinction. Class action is a general remedial provision. The Fair Labor Standards Act internal remedy is concerted action, which is arguably, or not, as we, as I suggested out there, is a powerful argument that it, isn't a substantive part of the, of the guarantee of the Fair Labor Standards Act, which I don't believe that, that an employer can exact a waiver of, of wage and hour protections and general protections of the Fair Labor Standards Act from its employees. Well, the, the, the Supreme Court has held in Gilmer, for example, that the distinction between substantive and procedural rights is, is an important one, and that the substantive rights are the operative protections of the statute. I don't want to take up your time doing that. My suggestion in the context in which I made it is foreclosed, and I didn't want to do that. This is a quite different, different issue in this particular case, and it is franked here, and I agree with my colleague, that, that this, you have to answer the questions of the particular meaning of this particular statute, mutual aid or protection. Now, our other panel may have reached out to do that, too, but, but this, the, the, the Congress provided specifically for concerted activities for the purposes of collective bargaining. That's one thing. Are other mutual aids or protections, and the, you can look at those concerted provisions of the Fair Labor Standards Act, which are not class actions, that, that simply that the conditions of employment, which is what you're talking about, are married to the, to the labor system itself. That is a procedural mechanism to remedy a violation of the Act, but it is not a substantive operative part of the statute. We're going in, we're going in circles, and, and I'm sorry I didn't make it myself clear. I don't need to. Go on. I appreciate your argument. I think we have it. Thank you. The Federal Arbitration Act, Your Honor, does not give greater deference to arbitration agreements than any other types of contracts, and because the FAA merely places arbitration agreements on an equal playing field with other contracts, it would, logic follows that if these types of waivers are upheld in a contract that involves arbitration, they must also be upheld in a contract that does not involve arbitration. Well, you're not, what you're not addressing is that, is that the arbitration provision is a, is an act of the Congress, which itself, the argument goes, provides a, is a very distinct remedy, a very powerful policy behind it, but if you take away, take it out of the arbitration context, then you don't have that second Federal statute. You're operating under this statute, the Labor Act 157. Your time is up, and I don't mean to cut you off, but I think we have this argument. They've been beaten to death 14 times in the, before the Court, so. Your Honors, I see my time is up, and you've stated it well, and I appreciate that. Thank you. Well, reserve three. You're not going to try to, to argue the underlying reasoning of the, the decision below, are you? Well, we, we, we don't want to take on Horton and Murphy Oil today. No. You have to, and that was the reasoning of the Court, the other, the preceding rule distinct, you know, did not just distinguish the Horton and Murphy Oil, Horton, it, it, it just doesn't follow Horton. Exactly. So we don't want to hear that argument, that you, you, just distinguish Horton today, okay? Don't, don't give us the Horton is wrong argument, because we can't do anything about that. No, no, no. Obviously not. Which is what the, that's what the, that's what they do over, you know, that, that may be Judge Elrod's approach, but like the Second Circuit, I would like to hear, because of course, we are bound by our rule of orderliness, so either you distinguish it, or you could elaborate arguments as to why it's infirm, which would leave any one or all of us two to fight separately, as the Second Circuit judges did. So I do have some questions in that regard, but go ahead and distinguish Horton. Well, I, I, first I'd like to say that for purposes of this case, our, our, the Board's position is that Horton does not apply, this Court's decision in Horton does not apply beyond page 357, which is where this Court said, if we were to stop here, it would make the NLRA the only governing authority, but in fact, we have the FAA to contend with. So you want us to read part of the opinion? We are here without the FAA. I'm sorry? You only want us to read part of the opinion? No, no, please feel free to read the whole thing, but our, our point is that this Court did not, in Horton, did not review or otherwise reject the fundamental principles on which this case is based, which is that, first, Section 7 protects employees' right to engage in collective litigation, and second, that interference with Section 7 rights by an employer violates Section 881 of the Act, and therefore, and that, and that Horton said as much before turning to the whole question about whether the Board's rule in Horton ran afoul of the FAA. But those two principles are the only principles guiding this case here. The, the question, the waiver in this case precludes employees from engaging in collective legal action, and the Supreme Court has held, and there's a whole list of cases that we cite in our brief. Most of the employers, as I've read these cases, have, have amended those waivers now to say that this is not in any way to frustrate your rights under Section 7. In other words, they, they waive. Right. They, they, they narrow their waivers. If, if that's correct, Your Honor, but the, the, the point is that, that, that some, some They, they, they're just dancing away from the, from this problem. Sorry? They're trying to, they're dancing away from the problem. Well, yeah, because the, the, the, the issue is not whether, I mean, obviously in this case there's a, there's, there's no reasonableness issue as to whether employees would construe the, the 4, 2, 1. What are your bullet points why this isn't covered by Horton? It's not covered by Horton, Your Honor, because Horton decided that the Board's rule was unlawful because under Concepcion, the Board's rule, according to this Court, disfavored arbitration. That was why the Board, this Court in Horton held that the Board's rule was unlawful. In this case, we are proceeding, we do not have a rule that disfavors arbitration. Arbitration isn't even part of the equation. We have a rule that is simply, under the National Labor Relations Act, unlawful. That would be the main... If we were to accept that, you're not saying, and we were to write that way, you're not saying it would be in tension with the larger reasoning that this is not a substantive right, it's a procedural right that can be waived? How would we write your way without fitting very awkwardly with the extended analysis given? Because, Your Honor, the substantive right analysis is an FAA analysis. The substantive right analysis is analysis that the Supreme Court used to determine whether a right in a statute to a judicial forum may be waived in the face of an arbitration agreement. But respectfully, I would disagree. D.R. Horton says, even so, there are numerous decisions holding that there is no right to use class action procedures under various employment-related frameworks. And then it gives a lot of examples. And it cites Gilmer in Carter v. Countrywide and says, similarly, numerous courts have held there is no substantive right to proceed collectively under the FLSA. And it cites Adkins and Kushner. And that's the key. Gilmer held that under the ADEA, which creates a right to have a judicial forum, that right is not substantive. It is not the heart of that statute, which is to prevent discrimination on the basis of age. It is an ancillary right, which employees may waive by signing an arbitration. You're saying this is, one, the purpose and molten core of the NLRA, and then textually, just literalism. You look at the statute and the phrase is concerted activity. Why wouldn't that include collective legal activity applying ESTEX? Exactly. That's your argument. It's not a remedial. This is not a remedial implementation of the norm. It sets the basic structure of the obligation owed. That's correct, Your Honor. That's the argument. But that's not consistent, though, with the rest of D.R. Horton, which says there are conceptual problems with finding the NLRA. When it says it's conceptual problems with finding it, it's conflict with the FAA. We know the right to proceed collectively cannot protect individual vindication of employee statutory rights under these other things. Under these other things. But it's saying that conceptually it's not the FAA. There's not a direct conflict with the FAA. It's saying that the NLRA really doesn't give that right. It's not a substantive right that the NLRA gives. It lays out the problem that it says Rule 23 is not the source of the right to the relevant collective actions. The NLRA is. But then it says that it's not in direct conflict with the FAA because the NLRA doesn't really give that as a substantive right. That's what D.R. Horton says. And so that's in conflict with your idea that it's only about the FAA. No, it's saying about the NLRA that the NLRA doesn't give that as a substantive right. And you have to have a source for your substantive right. And it says in D.R. Horton that the NLRA does not give that as a substantive right. With all due respect, Your Honor, under Section 81 of the Act, it doesn't matter if a right is substantive. All that matters is that right is enshrined in Section 7. If that right is in Section 7, then violating that right violated Section 81. There is no hierarchy of rights within Section 7, whether they're substantive or ancillary. They are all equally Section 7 rights. And an employer's interference with those rights violates Section 81 of the Act. Your best authority for that, I'm assuming, is some Supreme Court case to which we trump anything. What's your authority for that? There's no hierarchy of rights that 157 embraces substantive and procedural rights. What's your authority? Right. There's – well, I guess the best authority would be city disposal, or one of the best that this Court cited where it said there's no intention Congress intended to limit Section 7 protections to certain circumstances where employee activities engage in one way or another. These are all equally rights. And that's where we get back to this idea. To bargain – no, I don't think anybody would suggest that to bargain collectively is just a waivable procedural right. No. You can't waive yourself off one of them when they act. Certainly not. And the language of Section 7, which – But to litigate collectively. Yes. That's different than to bargain collectively. Yes, but it falls under Section 7's definition of other concerted activities for mutual aid or protection. Well, we've held that it's only a remedy. Only under the – only for purposes of the FAA, not within the NLRA. Well, that's our dispute here. Yeah, sure. Of course. No, but the Board is obviously the agency entitled to interpret the NLRA. And to the extent that the statute – to the extent that the statutory language doesn't foreclose the Board's reasoning, then this – I respectfully submit this interpretation. And it is entirely – an entirely reasonable interpretation for the Board to find that collective legal action is just one of the many – That's getting back to the exchange we had with opposing counsel, which is no deference was given in Horton. I thought when I read it it was because it infringed the FAA. And you're saying without the FAA or some other body of law being infringed, we would then give deference. Yes. Is that your argument? That's correct, because actually in Horton, this Court recognized that Board precedent and some circuit courts have held that the provision protects collective suit filings. I would add that some Supreme Court precedent as well in Eastex. This Court has no quarrel with that fundamental proposal. What this Court objected to in Horton is the idea as in Concepcion that the Board was – that the plaintiff there was interpreting Section 7 and the illegality defense in a way that disfavored arbitration specifically. But what Horton didn't do is then say that the illegality defense does not apply at all, is no longer a reasonable defense to – under the NLRA to a contract. Same as in Concepcion. In Concepcion, you had an unconscionability defense, a state law unconscionability defense, which was used, the Supreme Court found, in a way that disfavored arbitration. But the Court didn't then say, and by the way, that unconscionability defense is now forgotten, struck. You can't use it anymore against any other contract that doesn't have an arbitration clause. The Court just said you can't use it to – as a defense to an arbitration agreement. And that's what Horton does here. And what Convergys is trying to do is basically apply that rule in reverse. Take this very specific rule of contractual defense as applied to the FAA and reverse apply it to all the rest, all the other universal general contract law. And you can't do that. That's the exception following the rule. Well, but it says here – again, it says we know that the right to proceed collectively cannot protect vindication of employees' rights, statutory rights under the ADA or the FLSA, because the substantive right to proceed collectively has been foreclosed by prior decisions. It's foreclosed – By prior decisions under the ADA and the FLSA, Gilmer and in this case, Ard. But it's in general. We know that the right to proceed collectively is foreclosed, that you don't have a substantive right to proceed collectively. And it says that it's not because there's a conflict with the FAA because it says there are conceptual problems with finding the NRA in conflict with the FAA. So it's not finding it in conflict with the FAA. It's not saying this is in conflict with the FAA, so therefore the FAA trumps. It's saying there's not a conflict because we've already said that you don't have a substantive right. So we don't have to deal with the head-to-head conflict. Well, again, the substantive right analysis, as I said, is only a creature of FAA law. It is not a creature of an NRA law. If the Act – and certainly we don't contest that this Court has found that the Act does not create a substantive right to maintain your ability to litigate collectively in the face of an arbitration agreement. That's what this Court has established. But here, again – That's the issue that the Supreme Court may or may not decide. Exactly. That's not a matter of grand conception. That's because the Congress of the United States said very expansively and as read by the Supreme Court that people can agree to resolve disputes. They opened widely and enforced widely the ability of parties to agree to resolve disputes. Privately, that's away from the courts. So when you take away that supplementary or additional add-on of the congressional expression, then you have – the analysis proceeds back to this. I think the question becomes, and I think it's properly framed, putting aside the question of arbitration and taking away the force of the congressional authority here because it's not applicable here, then you're looking solely at this. Does this mean collective action? I think our – I read our decision to be a little bit more expansive, but I understand your argument. But I'm just trying to accent the point that it matters a great deal that you're talking about an arbitration. And it matters simply because – not of some abstract – but it's because Congress provided across all disputes virtually that the parties can go agree and agree to trial the case to a stump if they want to. But – and sometimes they're going to get that, but that's my limited point. Take that off the table. And all I'm asking us to do is take away arbitration as that source of authority and rig the statute. And then that's the question. And I think that's probably what I think the Seventh Circuit, Judge Petit, just would and others. And I don't – we're discussing this. I think it may be a waste of time because there's nothing we can do to alter what's out there. And we're going to write what we're going to write here. So you made your point very well. Did you have anything further that you haven't articulated that you want to articulate? Unless you have any further questions, I mean, I would simply reassert a couple points, which is that the point of the waiver here is that it's a prospective waiver. And that's the problem, is that it strikes across the board and prevents employees at any time from asserting their collective action rights, which Congress felt was very important that they maintain those rights at the moment when a dispute arises. And that's why the board has found that you can't waive them prospectively across the board, because when a flashpoint happens, whether it be the employer's refusal to pay overtime, as in Salt River Valley, or freezing conditions on the shop floor, as in Washington Aluminum, that's the moment that employees need to have those rights there. That's the moment for which Congress designed the NLRA, which is to act as a safety valve in these flashpoint moments. So that's one point that I would make. I do have a question on the issue dealing with striking the pleading, moving to strike the pleading. Why wouldn't that be otherwise protected, even if you ride on the merits? Because under Bill Johnson's footnote 5, Your Honor, the Supreme Court said that an extension of the First Amendment. And in this case, if you find for us on the merits, Convergys doesn't dispute that it tried to enforce this waiver. If you find for us on the merits, then that waiver is unlawful. So they can't even make an argument in their pleading, even for expansion of the law or to preserve it for future determination by another body. They can't make an argument in their pleading? Under Bill Johnson's, Your Honor, there's one place where if there's a question of, you know, if it's not an unlawful objective, then you can discuss as to whether the Convergys in this case has a reasonable basis to proceed. But if it's an unlawful act, no. Filing the pleading is unlawful. Filing the claim in the pleading is unlawful. And so they can't ever get to the Supreme Court on that issue in that case. That's our position, Your Honor. And the reason for that is the effect that it has on employees. Filing the pleading in and of itself has a chilling effect on the employee's ability to assert their rights. They take away from that that they can't do it. Well, how do they say you're wrong? How do they get it adjudicated that you're wrong in that case? Well, they deny the motion. Yeah. And then you can join the issue. In the split that's emerged, even on a narrow reading of Horton, there's been momentum, but it hasn't been consensus. The Ninth Circuit had a dissent, just as our Horton case had a dissent. Do you have very little time left? I'd love to hear just distilled down to one, if you can, one sentence for and against the interpretation of 157. In the Horton context? Yes. Judge, how do you pronounce the name? Acuda? Acuda? Acuda. Acuda. Do you read her dissent to enhance any of the arguments made by the majority in Horton, or do you read it to be identical? I read it to be very close or identical. I think that the fundamental issue is, well, the argument also was perhaps formed a little differently in our supporting brief, in the amicus brief in the Ninth Circuit. But our point, really, which maybe we didn't quite make as strongly in this case, it was the first one, is that the board's decision does not run afoul of the FAA because of the savings clause, because the savings clause recognizes this illegality defense, so long as the defense in question does not disfavor arbitration, which is what Concepcion said they couldn't do. And in this case, we have an illegality defense that's been recognized for a long, long time that goes all the way back, actually, to Kaiser, Steele, and Mullins. You know, the notion that private contracts cannot violate federal law. And so this is not an illegality defense that applies strictly against or even overwhelmingly or disfavors arbitration. It's applied evenly across the board. Thanks. Thank you, counsel. If that resolves all your questions, please sit down. Thank you very much. Your Honors, on rebuttal, I would like to discuss the issue of the enforcement of Convergys' waiver. This Court ruled in Murphy-Oyl that the NLRA does not preclude an employer from enforcing a waiver if it is not baseless and retaliatory. In this case, just as in Murphy-Oyl, the dispute began when Hope Grant filed a class and collective action against Convergys Corporation. And Convergys, like Murphy-Oyl, defended itself by filing a motion to strike. I believe in Murphy-Oyl it was a motion to dismiss. But to strike her class and collective claims based on the waiver. There isn't any allegation, there never has been, nor is there any evidence of any adverse action taken against Hope Grant or any of the other litigants in the suit. There is also no evidence or allegation of any union animus. So it really can't credibly be argued that Convergys' assertion of its class waiver was retaliatory. And in fact, Convergys had very good reason to believe that its waiver was in fact valid and enforceable because the very same waiver had already been enforced by one Federal District Court. That is the Middle District of Georgia in Palmer v. Convergys. Another point that I'd like to hit is that it is true, as the Board concedes, Congress provided no right, either in Section 7 or anywhere else in the NLRA, for a private right of action for employees, much less the right to a class or a collective action. And it would be nonsensical to allow employees to waive their right to a judicial forum as part of an arbitration agreement so that they could entirely waive a judicial forum, but not waive the right to merely proceed as an individual rather than as a class or a group in a judicial forum. If anything, an arbitration agreement that waives class and collective claims is more restrictive than the same agreement without that language. It's clear that the assertion of rights does constitute protected concerted activity, but the adjudication of those rights through legal action as a class is not. While the NLRA protects the assertion, it doesn't — It just translates to what changes concerted action, and you can't proceed in a concerted way. You have a right on the act, but you have to go senile. It waives that portion of the subject. Why isn't — I'm sorry? I didn't hear your question. I'm sorry. I'm sorry. Well, in fact, as explained before, Sections 7 and 9 of the Act expressly reserve a right to refrain from concerted activity. If Congress had intended that Section 7 provide a substantive right to all forms of concerted activity, those being procedural as well, then it certainly could have put in language in the Act to provide for the express limitation of any such rights. And that is exactly what Congress did in Section 13 of the National Labor Relations Act, where it placed clear limits on not qualifying or waiving employees' rights to strike, unless that was part of a collective bargaining agreement. Just as a class or collective action waiver does not eliminate a statutory remedy, it also does not prevent an employee from engaging in concerted activity in pursuit of the remedy. And, for instance, employees can band together to send demand letters to their employer. They can pool resources. They can share common counsel. And they can work together in individual suits. They can all get together and file individually 100 named plaintiffs in a Fair Labor Standards Act and sue. That is absolutely correct, and there is nothing to keep the courts from consolidating those actions on its own accord. That is actually what happened in the case of Italian Colors Restaurant, where there were individual claims filed and the Southern District of New York consolidated. In other words, they can proceed with concerted actions, even though they waived that. They're not proceeding concertedly, although all of them can go over together and file a complaint with 100 separate named plaintiffs. All you're talking about is a mechanism under concerted action whereby other people are unable to opt in. That's correct, Your Honor, but to clarify. I'm not sure what you're really waiving here in the real world. Your Honor, may I respond? Yes, sure. The filing of an individual action, and as Your Honor said, multiple individual actions, is itself protected concerted activity as long as it has arisen out of a group workplace concern. And the Board has recognized that principle in several cases, including Salt River Valley Water Users Association as well as Mojave Electric Cooperative. And for these reasons, as well as those cited in its brief, Convergys would respectfully ask this Court to grant its petition for review and deny the Board's cross-petition for information. Thank you.